May it please the Court in good morning. Jordan Schweller on behalf of Petitioner Angelus Hernandez-Pulido. With the Court's permission, I would like to take these issues out of order. I would like to begin with whether the I.J. abused his discretion in the denial of the continuance or the administrative closure. I feel that the I.J. abused his discretion in not granting the continuance, which in fact did not allow the petitioner's United States citizen daughter, who was a month away from turning 18, to turn 21 in order to file a visa petition on her behalf. The I.J.'s reason for this denial of the continuance and administrative closure were the complications of a necessary waiver. In fact, the I.J. did opine that the time was not too remote in light of the Board's recent decisions and the cases that had been remanded to him. The I.J. failed to do a proper analysis in that request for a continuance or administrative closure. Since the continuance was so important to the petitioner's relief, which was the adjustment of status, he should have performed the four-prong analysis and the three-prong analysis. Beginning with the four-prong, we ask, what was the nature of the evidence to be excluded as a result of the denial of the continuance? The nature of the evidence to be excluded was the visa petition, which was paramount to the petitioner's strongest form of relief, which would have been an adjustment of status. Was that petitioner's relief or was that her son's relief? That was the petitioner's relief. Petitioner had a daughter that was 17 and 11 months at the time of the hearing. Okay. So it would have been a three-year continuance. The second prong, which the I.J. should have analyzed. Wait a minute. You threw me there. I thought I was with you, but just refresh. The three-year continuance, she was how far away from Kuala? The daughter was how far away? Three years and one month, specifically. Okay. So what it was asking for was a continuance of three years and a month, so there would be a visa petition? That's correct. That would then allow her mother to adjust status? That's correct. Okay. And the authority for that long a continuance is? Well, as the Court is aware, a continuance is decided on a case-by-case basis. Yes. And it obviously is the I.J.'s discretion. However, that discretion is not unfettered. Okay. I believe since it was so important in this case, the I.J. at least owed the petitioner a thorough analysis of why he denied the continuance. Okay, I have it now. Thank you. So I'll get to the second prong of the analysis in Ahmed v. Holder. Was the conduct of the immigrant reasonable? Yes. Yes. We have a big bag, furry bag. Sorry, but it falls across my notepad. No problem. The conduct of the immigrant was reasonable. Obviously, the petition was very important for an adjustment of status. So, of course, she had to ask for a continuance. So she wanted the continuance so that she could adjust based on her children's U.S. citizen. She had a United States citizen child who was 18, yes. Okay, so the BIA doesn't really discuss the continuance issue. They do not, which I was a bit surprised by. So, yeah, they don't discuss it at all. And your argument is to the right, so we have to review the I.J. and the I.J. gave no reasons. His only reason, he said in favor of the petitioner that the time is not too remote in light of the recent cases. His only reason for the denying of the continuance was the complications of a necessary waiver that may fall under the third prong of Ahmed, the inconvenience to the court. I don't really see how this should be given very much weight, seeing as how the petitioner was here for 20 years, started a family. In fact, she had a 17-year-old and 11-month daughter who was going to be 18 in one month, and the number of continuance granted. What is very, very important in this case is we had not asked for one single continuance. This was the first continuance request in the entire proceedings. Would she still be eligible in spite of the 1999 and 2007 convictions? With necessary waivers, yes. With waivers, so she would have to get a waiver under? That's correct. Under which statute? 212. 212, okay. Then there's also the three-prong analysis, which is under matter of Sebron and Perez-Andrade, the questions in that analysis. Is there an inability to proceed despite a good-faith effort? Yes, there was no request for continuance. I don't see how it could not be construed as a good-faith effort to wait three years. Obviously, this Court is aware that, by law, a visa petition could be filed until her daughter turned 21. Is the evidence sought favorable or cumulative? I think the answer is obvious there. It's favorable. And will prejudice be sustained by the DHS if a continuance is granted? Removability had already been conceded. There were no witnesses that the Department of Homeland Security needed to call, so I believe that there was no prejudice to the Department of Homeland Security. I guess the main point in all of this is, since it was such an important issue to the petitioner, who was the respondent at the time, the IJ abused his discretion by not giving the petitioner an analysis. So what is the remedy now? Because here we are three years later, the U.S. citizen child is 21, and we can't unwind this whole thing, can we? I believe we can. I believe we can send it back to the IJ on the grounds that he abused his discretion by not granting the continuance, and then we look at what happened since. Did her daughter turn 21? Yes. Did she file a visa petition? Yes. Was it approved? Yes. What's interesting to note, this is not a marriage, where a marriage fraud interview needed to be conducted. This was a finite amount of time. These things were going to happen. They did happen. In fact, they happened a year and a half ago. Her daughter is going to be 23 in November. So these things did happen, and she will now be eligible for an adjustment of status with the necessary waivers. And the CIMT would require the waiver, is that it? That's correct. There's one at issue. That's the 2009. Excuse me? That's the one is to the 2009? Yes. Because apparently the government has withdrawn the 2007. That's correct. That's correct. Sorry, I made my notes are wrong. I thought it was in 1999. It was in 19 19. I got confused with the decades. 1999. Yes. The government has withdrawn its argument on the 2007. So let's talk about that 1999. That's okay with the court. Yes, please. In this administrative record, all we have is an FBI rap sheet. That shows what appears to be an arrest. But there's no disposition. Petitioner never got a chance to have a cancellation of removal hearing. She was never given the chance to testify credibly under oath. As to what happened in 1999. And yes, of course, after the Real ID Act, it is. The petitioner who was responding burden to prove her eligibility. But there is absolutely no paperwork in this administrative record. Showing that she was convicted of anything in 1999. I was thinking about it and I feel it's almost equivalent. Let's say I was arrested in 1999. Let's say I was arrested for stealing something. But I was never convicted. These records were purged. How am I supposed to prove that I was not convicted? If the only records that are still available to anyone are an FBI rap sheet. Not showing any disposition, not showing a conviction. Well, the requirement is that there has to be a conviction of a CIMT. To be made ineligible for cancellation. And I see the rap sheet and you're right. It just says arrested or received. Exactly. That's the point of the argument. Looking at that, who's to know? Each court purges records after a certain amount of time. It's been 15 years. So if this happened to me, how can I prove that I wasn't convicted? I certainly can't make up records. I think the only way would be to put me under oath and have me testify. Well, it's a demonstration of ineligibility. So isn't it the government's burden to show the conviction? The government has not shown anything except an FBI rap sheet showing what appears to be an arrest. Do you want to reserve the rest of your time? Please. Thank you. State your name, I'm sorry. May it please the Court. Todd Cochran on behalf of the Attorney General. So from your letter that we received on Friday, the government is withdrawing any reliance on the 2007 convictions? That's correct, Your Honor. Based upon our analysis, the intervening case law, we weren't confident that those were CIMTs. Rather than pursuing that course of action here before the Court, we withdrew those ahead of the argument to streamline the issues. Okay. So where is the evidence of a conviction under the 1999 conviction for welfare fraud? Well, I agree with opposing counsel that the only document that purports to show anything related to that conviction is the FBI rap sheet, which shows, I agree as well, it shows that she was arrested. It doesn't actually show that she was convicted. There are a couple of issues related to that. Number one, during the immigration judge hearing, petitioner's counsel conceded that she'd been convicted of that. That appears in Administrative Record 142. The immigration judge required both parties to brief the eligibility for cancellation during the pendency of the proceedings. The DHS filed a document to that effect, and they alleged that the 1999 welfare fraud conviction was a CIMT. The petitioner, or the respondent there, petitioner here, Ms. Hernandez-Polito, didn't address that in her responding brief, and that appears at AR 55 to 58 as her CIMT argument. So at the hearing subsequent to that, the immigration judge at page 142 said, was there any response from the respondent to the government's argument that the 1999 conviction was a CIMT? Petitioner's counsel said, no, we will submit it, Your Honor. And then there's a little bit of exchange. And then he says, again, I'm aware of the conviction under the Welfare Institutions Code, and we'll submit it. The immigration judge then discussed with DHS counsel whether that went to discretion for cancellation as well as a disqualifying offense prong of the cancellation of removal statute. So the government's position is that she conceded that she was convicted of a CIMT, which discharged the government of its burden to put any further evidence in. And we rely upon Paggion and Perez-Mejia, which I recognize those cases go to the government's burden to show removability, which was not the issue here. But in those cases, if the petitioners can concede removability when it's the government's burden, surely they can concede their own eligibility for relief. They can discharge their own burden that way as well. So this is a case of first impression for us? I don't know if I want to go that far, Your Honor. I'm just trying to make an extrapolation of the case law there. And I will affirm with the Court as well that I went back and looked at this as well with the absence of the actual conviction document, and I was, it's not in the administrative record, but I was in fact able to obtain the conviction documents that showed that she actually was convicted. And I'm happy to supplement the Court with that if the Court so requires, but again, I recognize that it's not currently in the administrative record as it sits. So I believe if any kind of remand for that would be futile because it actually existed, actually occurred. Well, usually those records are in the administrative record. I mean... Yes, usually those documents would appear in the record. I'm anticipating the Court's question, why would DHS not put that in the record? I don't have the answer for that, Your Honor. I wasn't... So counsel raised the argument about the continuance and adverted to the IJ statement that the waivers would be a complication. Let's assume that there is still the 1999 CIMT in her record. Does that mean that DHS would in no way consider the circumstances that currently exist and agree that she shouldn't have to be removed? I don't know what DHS would say. I mean, I think there's a lot of contingencies here for the petitioner to succeed on the abuse of discretion, which is a high standard, as the Court knows, for the continuance issue. She asked for a three-year continuance, which is a long period of time, admittedly. But who would it prejudice, given that here we are three years later? True. That's certainly, there's definitely some time that passes in many of these cases, Your Honor, on that. I point the Court to the Sandoval-Luna case, which says when there was no visa filed and no relief immediately available, the IJ did not abuse its discretion denying a continuance. The immigration judge also asked the DHS attorney the government's position on administrative closure or a continuance, and the attorney there in the record notes that, you know, given her criminal history, they were unlikely to agree to that as well. So I think the Sandoval-Luna case shows that discretion was not abused here. The Court also raised the issue that the Board did not discuss the continuance in its decision, which is true, but the Board did cite the matter of Bourbon and adopt and affirm the immigration judge's decision on that issue, on the continuance. Is this, do you think that if you availed yourselves of our mediation program here, that we've given the parties, the government and the petitioner here, the opportunity to look at the circumstances as they exist now? Would that be a productive effort, not necessarily guaranteeing a result, but an effort? Well, that was an effort that was actually already undertaken in this matter, Your Honor. Predecessor's counsel put the case into mediation, I believe it was January of last year, because the daughter had turned 21, had filed a visa petition, had been approved. She then, or counsel then approached the Department of Homeland Security regarding, during the mediation program, if they're willing to PD or a joint motion to reopen to adjust status. DHS declined to join in that motion. Petitioner filed that motion unilaterally with a motion to reopen with the Board. The Board denied her motion as untimely. That came up to this Court earlier this year in a separate PFR, and this Court summarily denied and dismissed it as untimely, amongst other factors. So we already availed ourselves of that option, Your Honor. It's a long answer to your very poignant question. I apologize for the detail. Well, do you think with new counsel, I mean, would that be, I don't know why there's new counsel, but would that make a difference? Well, Your Honor, I, in fact, revisited this issue regarding the PD issue or adjustment of status with DHS chief counsel responsible for this case just on Monday, given our withdrawal of the three other what we thought previously were CINTs, regarding whether it would change DHS's opinion regarding PD or the joint motion to reopen. And I was told, again, no, it does not change our opinion on that. They're not willing to grant any sort of PD in this matter. Well, you know, the state of this record is not very good for you. You know that. We don't have a conviction in this record. I recognize that, Your Honor. As I mentioned before, that gave me some pause as well. I know. So you're giving us hearsay. You don't have any evidence in the record of a conviction. True. It is not in the record. I would agree with that. And you withdrew the other ones. Correct. Because we felt that they were not viable CINTs under the current state of the case law. But, again, we believe that we don't take evidence at this point. I recognize that, Your Honor. I fully recognize that. But we believe that the petitioner's admission of the conviction and the fact that it was a CINT, the government no longer pursued putting other evidence in because they conceded that before the IHA. And all parties moved on and treated it as such throughout the proceedings. What was the AAR's site of her admission? 142, Your Honor. Her admission? Her account through counsel, yes. That's the other problem is, as you well know, the state of the FAR in some areas representing petitioners. All right. Do you want to submit? No further questions. I would submit, Your Honor. Judge Noonan, do you have any questions? All right. Thank you. You had a couple minutes left. Mr. Schweller? Yes. Thank you. As Your Honor pointed out, there is absolutely no evidence in this record of a 1999 conviction. She was deprived a full cancellation of removal hearing. Therefore, I do believe that it should be remanded for a full cancellation of removal hearing. In addition, I do believe that the IJ did abuse his discretion. The continuance was of utmost importance in this case. In fact, it was the petitioner's strongest, by far, form of relief. And the fact that nothing was analyzed under the law, absolutely nothing. The one quote that the judge made, I'm sorry, the two quotes, one, the time is not too remote, which is on the petitioner's side. Two, the necessary complications of waivers, which I guess could go to the inconvenience to the court prong in matter of Ahmed, but it shouldn't be given much weight since the petitioner was here for 20 years. She now has two children that are over 21. As such, I do believe this case should be remanded for the appropriate analysis of law under Ahmed and matter of Hashmi. And I believe the third thing is that petitioner does not need to be prima facie eligible for an adjustment of status to be given a continuance to pursue that. I believe that was also said in Ahmed v. Holder. And one more thing, as the court is well aware of the recent decision published by the BIA, her particular social group was, the IJ used the social visibility standard instead of the new standard which is socially distinct within the society in question. And another reason why the IJ found that she did not meet the standard for a particular social group is because many other social groups that are alike the petitioners have not been found to constitute particularity for purposes of a particular social group for the act. And in the recent case of Prier-Bach which cites, give me one second. Prier-Bach citing Enrique Revis specifically says that the rule that thus emerges in the following, to determine whether a group is a particular social group for the purposes of an asylum claim, the agency must make a case by case determination as to whether the group is recognized by the particular society in question. Therefore, that case, our case needs to be remanded for an analysis under the new socially distinct within the society in question standard which has replaced the socially visible standard in which the petitioner's particular social group was analyzed by the immigration judge at the time. Thank you very much. We will submit Hernandez-Polito versus Holder and we're going to take a brief recess while we set up for the next case.
judges: Noonan, Wardlaw, Fisher